**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Charles Andre Hinch,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 15 C 9316 |
| | ) Judge Rebecca R. Pallmeyer |
| **Officer Michael O'Connor,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Andre Hinch has brought this *pro se* civil rights action under 42 U.S.C. § 1983 against Defendant Romeoville Police Officer Michael O'Connor, alleging that O'Connor used unreasonable force when he arrested Hinch on November 28, 2013. Defendant has moved for summary judgment [73], contending that the undisputed facts demonstrate that his use of force was objectively reasonable or, in the alternative, that is he is entitled to qualified immunity. Plaintiff maintains that Defendant's use of force was objectively unreasonable and has filed his own cross-motion for summary judgment [86]. For the reasons discussed below, the court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

## BACKGROUND

The facts as set forth here are presented in Defendant's statement of uncontested material facts in support of his motion for summary judgment. (Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts (hereinafter "DSOF") [75].) That statement complies with this court's Local Rule 56.1 and is supported by citations to materials in the record. Defendant has also complied with Local Rule 56.2, providing Hinch with an explanation of the requirements of Local Rule 56.1. (*See* Not. of Summ. J. Mot. to *Pro Se* Litigant [79].) For his part, Plaintiff has submitted several documents in response to Defendant's motion, but his statement of facts and responses to Defendant's statement of facts (Pl.'s L.R. 56.1 Stmt. of Disputed Material Facts in

Supp. of Mot. for Summ. J. (hereinafter "PSOF") [88]), are unsupported by citations to the record, leaving Defendant's statement unrebutted. *See McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").[1]

## **FACTS**

On November 28, 2013, at approximately 9:30 p.m., Plaintiff drove his neighbor Robert Russell to Kohl's Department Store in Romeoville, Illinois. (DSOF ¶ 1.) Plaintiff dropped Russell off at the store's entrance and proceeded to wait for Russell in the parking lot, which was full of people and vehicles. (*Id.* ¶¶ 3, 5.) Plaintiff acknowledged that he knew at the time that Russell "does a little shoplifting" and that it was possible that he would steal merchandise from Kohl's. (*Id.* ¶¶ 2, 3; Hinch Dep., Ex. A to DSOF [75-1], 61:12–13.)

That evening, Amanda Hoover, Kohl's loss prevention specialist, was monitoring activity in the store from the security office using the store's video surveillance camera system. (*Id.* ¶ 6.) At approximately 10:05 p.m., Hoover saw two men stealing merchandise. (*Id.*) She called 911

---

[1] The court notes, further, that many of Plaintiff's factual assertions also contradict his deposition testimony (*see, e.g.*, PSOF ¶¶ 2, 30, 31, 34, 41, 56– 57), or are inconsistent with the facts underlying his conviction for aggravated battery of a peace officer, (*see, e.g., id.* ¶¶ 28, 30, 31, 32, 34, 41, 56). Other statements take contain arguments instead of assertions of fact. (*See, e.g., id.* ¶¶ 29, 40, 42, 44, 45, 47, 48, 51, 58, 60, 63.) Statements of this sort would be disregarded even if supported by citations to the record. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (recognizing agreement among circuits that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statements . . . without explaining the contradiction or attempting to resolve the disparity"); Mem. Op. & Order of Oct. 19, 2016 [42] at 5 (collecting cases and explaining that Hinch may not allege facts that are inconsistent with the facts underlying his plea agreement); *Graziano v. Vill. of Oak Park,* 401 F. Supp. 2d 918, 936–37 (N.D. Ill. 2005) (explaining that, if the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted).

and reported the theft. (*Id.* ¶ 7.)

Defendant O'Connor and Officer Scott Stutler responded to a call of a retail theft in progress at the store. (*Id.* ¶ 9.) Defendant and Stutler arrived dressed in fully visible police uniforms, each of which included a police vest, duty belt, badge, nametag, and a Romeoville Police Department patch on the sleeve. (*Id.* ¶ 10.) A police dispatcher had advised Stutler that there were two black male offenders inside the store near the north entrance, so Stutler positioned himself at that entrance, waiting for the offenders to exit. (*Id.* ¶¶ 11–12.) Later, the dispatcher reported that one offender, later identified as Russell, was wearing a black and brown jacket with the words "I have a dream" on the back and was headed toward the store's south entrance. (*Id.* ¶ 14.) Stutler then observed a black male who matched the dispatcher's description exit the store, look in his direction, and start running.[2] (*Id.* ¶ 15.) Stutler pursued Russell, yelling, "Stop, police." (*Id.* ¶ 16.)

Russell ran toward a dark-colored vehicle in an aisle of the parking lot facing the store and entered the front passenger seat of the vehicle. (*Id.* ¶¶ 17, 22.) By this time, Stutler had caught up to Russell; Stutler reached into the vehicle and grabbed Russell in the chest area. (*Id.* ¶ 23.) Stutler ordered Russell to stop and continued holding on as Russell sat down in the vehicle. (*Id.* ¶ 24.)

Plaintiff was seated in the driver's seat of the vehicle that Russell entered. (*See id.* ¶¶ 18, 25.) Plaintiff had driven the vehicle up the aisle of the parking lot and saw Russell coming toward him. (*Id.* ¶ 18.) Plaintiff saw Stutler grab Russell and wrestled with him after Russell entered the vehicle; at the time, Plaintiff knew that Stutler was a police officer and that he was trying to arrest Russell. (*Id.* ¶¶ 25–27.) Russell slammed the door on Stutler's right arm, trapping Stutler's arm

---

[2] A drawing attached to Plaintiff's deposition transcript shows that Kohl's north and south entrances were both on the western side of building. That is, from his position at the north entrance, Stutler would have been able to see Russell leaving the south entrance because it was on the same side of the building. (*See* Ex. 6 to Hinch Dep.)

in the door, and urged Plaintiff to drive. (*Id.* ¶¶ 28, 30, 34.) Stutler released his hold on Russell, but Stutler's arm was trapped by the vehicle's door as Plaintiff began to drive. (*Id.* ¶¶ 29, 31.) Plaintiff drove the vehicle forward with Stutler's arm still trapped in the door, dragging Stutler through the parking lot. (*Id.* ¶ 32.) As Plaintiff drove, Russell held the door, keeping Stutler's arm trapped, even as Stutler screamed "Stop, police!" several times. (*Id.* ¶¶ 34, 38.) Stutler tried reaching for his weapon several times with his left hand, but he slid down the vehicle each time. (*Id.* ¶ 45.) Stutler attests that he was terrified that he would be sucked underneath the vehicle, run over, and killed. (*Id.* ¶ 48.) Plaintiff testified during his deposition that he was "trying to get away" and was not thinking about Stutler's safety. (*Id.* ¶¶ 33, 35; Hinch Dep. 96:3–14.)

Defendant, who was in his squad car in the Kohl's parking lot, saw Stutler chasing someone in front of the store. (*Id.* ¶ 19.) Defendant drove down one of the aisles and saw Plaintiff's vehicle stopped in the aisle in front of him. (*Id.* ¶ 20.) As he exited his squad car, Defendant saw Russell run toward Plaintiff's vehicle with Stutler directly behind him. (*Id.* ¶ 21.) Defendant saw Stutler struggling with Russell at the front passenger door and saw Russell trap Stutler's arm in the door before Russell shouted at Plaintiff to drive away. (*Id.* ¶ 40.) Defendant then saw the vehicle jolt forward violently and move up the aisle toward the front of the store, dragging Stutler along with the vehcile. (*Id.* ¶ 41.)

Defendant yelled, "Stop, police," but the vehicle kept moving. (*Id.* ¶ 42.) Defendant also heard Stutler yell "10-78," a code meaning that an officer needs assistance. (*Id.* ¶ 43.) Two eyewitnesses, a Kohl's customer walking in the parking lot and Hoover, the Kohl's employee, recall that Stutler had a look of "fear or distress" on his face. (*Id.* ¶ 39.) As Plaintiff drove away, the car windows were rolled up, and the radio was on. (*Id.* ¶ 36.) Plaintiff maintains that he did not hear the officers yelling for him to stop the vehicle. (Hinch Dep. 100:8-101:10.)

When Plaintiff's vehicle reached the end of the parking lot aisle in front of the store, he

made a right turn. (*Id.* ¶ 46.) Defendant could see that Stutler's arm was still trapped in the vehicle and that he was being dragged "in a vertical helpless position." (*Id.* ¶ 44; O'Connor Aff. ¶ 19.) Defendant believed that Stutler would be sucked underneath the vehicle, run over, and killed. (*Id.* ¶ 47.) He concluded that the only effective way to save Stutler's life was to discharge his firearm to stop the vehicle from continuing to drag Stutler through the parking lot. (*Id.* ¶ 50.) Defendant removed his firearm from its holster and fired several shots at the driver's side of the moving vehicle. (*Id.* ¶ 51.) Plaintiff was shot in his left elbow. (*Id.*) The vehicle came to a stop, and Stutler was able to remove his arm. (*Id.* ¶ 52.) Less than one minute elapsed between the time Russell left the store and the time that shots were fired. (*Id.* ¶ 54.)

Defendant, Stutler, Hoover, and two bystanders in the parking lot all stated that they believed Stutler's life was in danger and that, had Defendant not fired his weapon, Stutler would have continued to be dragged and would be run over, resulting in serious injury or death. (*Id.* ¶ 58.) Plaintiff also acknowledged at his deposition that dragging a person by a car could result in serious injury or death. (*Id.* ¶ 56.) As a result of being dragged, Stutler suffered nerve damage and a torn labrum in his right shoulder. (*Id.* ¶ 60.) He underwent surgery but eventually was forced to retire due to the injuries he sustained. (*Id.*)

Plaintiff and Russell were taken into custody. (*Id.* ¶ 53.) Plaintiff subsequently was indicted on two felony counts of aggravated battery. (*Id.* ¶ 62.) The criminal indictment charges that on November 28, 2013, Plaintiff

> knowingly and without legal justification made physical contact of an insulting or provoking nature with Scott Stutler, knowing Scott Stutler to be a peace officer employed by the Romeoville Police Department, engaged in the performance of his official duties, in that said defendant drove a vehicle which dragged Scott Stutler in violation of [720 ILCS 5/12-3.05(d)(4)(i)].

(Bill of Indictment, Ex. O to DSOF [75-3].)

Plaintiff pleaded guilty to the charges. (*Id.* ¶ 63.) At the plea hearing, which Plaintiff attended alongside counsel, the following facts were presented as the basis for the guilty plea:

5

> On November 28th of 2013, in Will County, Illinois, Officer Scott Stutler . . . was trying to arrest Robert Russell in the parking lot of a retail establishment.
>
> He chased after Mr. Russell who entered the vehicle in which this defendant was in the driver's seat. Mr. Stutler reached into the vehicle. Russell trapped his arms [sic] in the door and told Mr. Hinch to drive, which Mr. Hinch did causing Mr. Stutler to be drug [sic] throughout the parking lot.
>
> All the other officers arrived and one officer discharged his firearm in the direction of Mr. Hinch striking him, I believe, in the arm, and at that point he stopped driving, and Mr. Stutler was no longer being drug [sic].
>
> However, in the process he had injuries to his shoulder that required extensive rehabilitation, and for approximately six months he was off work because of it, and he's still in rehab for that shoulder now.

(Aug. 1, 2014 Plea H'rg Tr., Ex. J. to DSOF [75-3], at 10.)

Nearly two years later, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendant used excessive force in effectuating his arrest. In his original complaint, Plaintiff set forth a version of events that was contrary to the facts underlying his conviction for aggravated battery of a peace officer. (*See* Mem. Op. & Order of Oct. 19, 2016.) The court dismissed that complaint but allowed Plaintiff leave to amend if he could do so without relying on allegations that conflicted with the facts underlying his conviction. (*Id.* at 6.) The court specifically explained that Plaintiff "must concede his conduct, or make allegations that are not inconsistent with" the facts underlying his plea agreement in any amended complaint. (*Id.*) Plaintiff submitted an amended complaint that complied with the court's order. (*See* Am. Compl. [46].)

## **DISCUSSION**

Both parties have moved for summary judgment on Plaintiff's claim for excessive force. Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, no reasonable juror could return a verdict in favor of that party. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). A court reviewing a motion for summary judgment does not evaluate the weight of the evidence, judge credibility of witnesses, or determine the truth of the matter, but instead determines whether there is a genuine issue of

triable fact. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Yet "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48) (emphasis in original).

The primary question at issue in this case is whether Defendant's use of force on November 28, 2013 was reasonable in light of the circumstances. A police officer "who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest," but the amount of force used must be objectively reasonable. *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). Officers often must "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, whether a particular level of force is objectively reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Given the difficult circumstances in which officers often make decisions about the amount of force necessary in a situation, courts give "considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Abbott v. Sangamon County*, 705 F.3d 706, 724–25 (7th Cir. 2013).

Whether an officer's use of force is objectively reasonable "depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Id.* at 724. Factors relevant to determining whether the force used was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Where the facts are undisputed, "[o]bjective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide." *Phillips v.*

*Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012).

### A. Factual Assertions Barred by Plaintiff's Criminal Conviction

Plaintiff asserts that he is entitled to summary judgment because he was merely sitting in his vehicle waiting for Russell when Defendant shot him (Pl.'s Mot. for Summ. J. [86] (hereinafter "Pl.'s Mot.") ¶ 2); Stutler, Plaintiff says, was not being dragged by the vehicle but, rather, was running alongside the vehicle while holding onto Russell. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. [87] (hereinafter "Pl.'s Mem.") at 2.) These assertions, however, are incompatible with Plaintiff's state-court conviction for aggravated battery of a peace officer.

In Illinois, "a person commits aggravated battery when, in committing a battery, other than by discharge of a firearm, he or she knows the individual battered to be . . . a peace officer . . . performing his or her official duties." 720 ILCS 5/12-3.05(d)(4)(i). A person commits battery if he "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. Illinois law also provides that "[a] material element of every offense is a voluntary act[.]" 720 ILCS 5/4-1. Thus, to be guilty of aggravated battery to a peace officer, Hinch must have (1) known that Stutler was a police officer performing his official duties; and (2) intentionally or knowingly; (3) without legal justification; (4) caused bodily harm to Stutler.

Plaintiff's assertions that he was merely sitting in his vehicle and that the vehicle did not drag Stutler is in conflict with the factual basis for his guilty plea and conviction—namely, with the notion that Plaintiff knowingly or intentionally caused Stutler's injury. As the court discussed in its prior ruling on Defendant's motion to dismiss, Plaintiff may not rely on a version of facts that negates the validity of his conviction in order to defeat summary judgment. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *see also, e.g., Tolliver v. City of Chicago*, 820 F.3d 237, 242-43 (7th Cir. 2016) (finding claim *Heck*-barred where plaintiff alleged facts inconsistent with his conviction for aggravated battery of peace officer).

### B. Defendant's Purported Violation of Police Policy

Plaintiff also contends that judgment in his favor is warranted because (1) Defendant discharged his weapon in violation of Police General Order 2-000, which provides that "no shots will be fired . . . at moving vehicles unless the situation becomes one of self defense" (Pl.'s Mot. ¶ 4; Pl.'s Mem. at 3); (2) Defendant did not submit to an alcohol/drug screening following the shooting in violation of General Order 2-008, which provides that "any officer involved in a shooting may be administratively compelled to provide a blood sample for alcohol/drug screening" (Pl.'s Mot. ¶ 5; Pl.'s Mem. at 3); and (3) Stutler violated General Order 2-000 when he reached into Hinch's vehicle to grab Russell. (Pl.'s Mem. at 2–3). In reports evaluating Defendant's use of force, copies of which have been provided by Defendant, the deputy chief and chief of Defendant's police department discuss whether department policies were violated during the incident. (*See* Informal Inquiry II-13-23, Ex. P to Def.'s Resp. to PSOF [92-1].) Both the deputy chief and chief conclude that Defendant technically violated the department's prohibition on shooting at moving vehicles, but both believed that Defendant was justified in firing to protect the life of a fellow officer and that the policy needed to be revised to provide an exception in such circumstances. (*Id.* at 1, 6.) With respect to alcohol and drug screening, the deputy chief opined that the police department should, as a matter of policy, obtain a drug and alcohol screen from officers involved in deadly use of force soon after the event, but he said he had no suspicions that Defendant was under the influence of drugs or alcohol at the time of the shooting. (*Id.* at 7.) The deputy chief also expressed his belief that the police department should warn officers to disengage from suspects that have access to an awaiting, running motor vehicle, but neither the deputy chief nor the chief offered the opinion that Stutler, let alone Defendant, had expressly violated any department policy by failing to disengage from Russell. (*Id.* at 1, 5–6.)

More importantly, as the Seventh Circuit has made clear, whether or not an officer complies with police department general orders is irrelevant on the question of whether the

officer's use of force violates the Constitution. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006); *see also United States v. Brown*, 871 F.3d 532, 536-37 (7th Cir. 2017) ("The excessive-force inquiry is governed by constitutional principles, not police-department regulations."). The Seventh Circuit has explained that "while [a general order] may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Thompson*, 472 F.3d at 454. The Seventh Circuit "has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations and police practices . . . . In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitutional has been established." *Id.* (internal citations and quotation marks omitted). Any purported violation of General Order 2-000 or 2-008 is not relevant to determining whether Defendant's use of force was reasonable.

### C.     Defendant's Use of Force

It is undisputed that Defendant used deadly force to stop Plaintiff's vehicle from dragging Stutler through the Kohl's parking lot. The use of deadly force is authorized if a police officer reasonably believes a suspect's actions place the officer, "his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury." *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (explaining that police officer may use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]").

The undisputed facts in this case conclusively establish that Defendant reasonably believed Stutler, his partner, was "in imminent danger of death or serious bodily injury." *Scott*, 346 F.3d at 757. Plaintiff has not presented admissible evidence to rebut the evidence that

Stutler was stuck in the door of Plaintiff's car and was being dragged through the Kohl's parking lot. Numerous eyewitnesses maintain that they believed Stutler would have suffered serious injury or died had Defendant not shot at the car, and Plaintiff is barred from denying that he at least had knowledge that his actions would cause Stutler harm.

In an analogous case, the Eighth Circuit considered a claim brought by the estate of a suspect who was shot and killed by a police officer as the suspect dragged another police officer with his vehicle. *See Molina-Gomes v. Welinski*, 676 F.3d 1149 (8th Cir. 2012). In *Molina-Gomes*, police officers arranged to carry out an undercover drug transaction with the suspect. *See id.* at 1151. The undercover officer opened the door of the vehicle driven by the suspect and ordered the suspect out of the vehicle. Instead of complying with the officer's request, the suspect put his vehicle in reverse, "dragging along the undercover officer who fell to the ground bleeding, and then attempted to drive around" a police vehicle in front of him. *Id.* At that point, one of the officers at the scene fired eight shots at the suspect, killing him. In the resulting excessive force case, the Eighth Circuit affirmed summary judgment in favor of defendant officer. *Id.* at 1152. There was no Fourth Amendment violation, the court explained, because the suspect's reckless driving "was a danger to the arresting police officers and to any drivers on the roadway . . . . [The officer] made a split second decision to try to prevent Molina Campos from harming the officers or others in the area . . . . [His] use of force under these quickly evolving dangerous actions by Molina Campos was objectively reasonable under the circumstances as [the officer] perceived them." *Id.* (internal citations and quotation marks omitted).

In this case, the undisputed facts similarly show that Plaintiff's conduct posed an active and ongoing threat to Stutler's safety that did not cease until Defendant shot him. Indeed, Plaintiff's conduct arguably posed a greater immediate danger to the arresting officer than did the suspect's conduct in *Molina-Gomes*: whereas the defendant in *Molina-Gomes* fired shots after

11

another officer had been dragged by the suspect's vehicle, Plaintiff's vehicle was dragging Stutler through the parking lot at the time shots were fired. Like the conduct of the suspect in *Molina-Gomes*, Plaintiff's conduct also posed a risk of danger to others in the area as Plaintiff tried to "get away" by driving through a crowded department store parking lot. It is "well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others." *Sykes v. United States*, 564 U.S. 1, 10 (2011), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Plaintiff complains that Defendant fired "'five' or more" shots and put "others" in danger (Pl.'s Mem. at 1, 3), but Plaintiff cites no evidence to suggest that Defendant fired more shots than necessary to stop Plaintiff's vehicle or that Defendant's conduct placed bystanders at unnecessary risk. The court concludes that Defendant's use of deadly force was reasonable under the circumstances.

Plaintiff suggests that Defendant's conduct was unreasonable because he did not identify himself as a police officer before firing his weapon. Substantial evidence is to the contrary; three eyewitnesses recall hearing O'Connor yell, "Stop! Police!" (DSOF ¶ 42.) Plaintiff denies he heard the command, but the fact that he did not hear warnings does not establish that Defendant's effort to spare his partner further injury was unreasonable. *See Ford v. Childers*, 855 F.2d 1271, 1276 (7th Cir. 1988) ("[T]he plaintiff's testimony that he did not hear any warnings fails to present a question of material fact as to whether the giving of the warnings was feasible and if in fact they were given.").

Plaintiff also argues that his vehicle was going only 3 to 5 miles per hour and that there is "no way" Officer Stutler's life was in danger because "all he had to do was let go of Russell." (Pl.'s Mem. at 2.) But, as discussed above, Plaintiff is precluded from denying that Stutler's arm was trapped in the passenger door of his vehicle and that Stutler was being dragged by the vehicle. While the speed of the vehicle is disputed, it is undisputed that Stutler was being dragged by the vehicle; that witnesses to events outside Hinch's vehicle believed Stutler's life was

in danger; and that Stutler could have been dragged, run over, badly hurt, or even killed if O'Connor had not fired his weapon. Stutler was in fact seriously injured as a result of the incident. Any dispute about the speed at which Hinch's vehicle was traveling is therefore immaterial.

Finally, Plaintiff contends that Stutler should have fired his taser during the foot chase, drawn his firearm at the vehicle itself or the vehicle's tires, or simply refrained from reaching into the vehicle. But Stutler was entitled to pursue Russell even after he entered Hinch's vehicle, *see United States v. Santana*, 427 U.S. 38, 43 (1976) ("a suspect may not defeat an arrest which has been set in motion in a public place . . . [by] escaping to a private place"). And the Seventh Circuit has rejected the position that the Fourth Amendment "requires the use of the least or even a less deadly alternative so long as the use of deadly force is reasonable under [*Garner*] and [*Graham*.]" *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994). In any event, the defendant in this case is O'Connor, not Stutler. Regardless of whether Stutler could have or should have conducted himself differently, Defendant O'Connor did not violate the Constitution by using deadly force in response to the situation he encountered. *See Garner*, 471 U.S. at 11 ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").

### D. Qualified Immunity

Qualified immunity protects government officials from liability unless the official violates a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). A right is clearly established if the right is "beyond debate" under existing precedent at the time the violation occurred. *Id.* Qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions," and protects "all but the plainly incompetent or those who knowingly violate the

law." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743 (2011). It applies regardless of whether the official's "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine whether a defendant is entitled to qualified immunity, the court must consider (1) whether the plaintiff has shown that his constitutional rights were violated and (2) whether the right was "clearly established" at the time of the challenged conduct. *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014). A defendant's conduct "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741. A case need not be directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Plaintiff has the burden of establishing that a constitutional right is clearly established. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

As discussed above, Plaintiff failed to identify evidence showing that O'Connor's use of force was objectively unreasonable at all. Qualified immunity is appropriate on this basis alone. *See Gibbs*, 755 F.3d at 537 (if either prong of the qualified immunity analysis is answered in the negative, the defendant is entitled to qualified immunity).

But even if O'Connor's use of force were not objectively reasonable as a matter of law, he would be entitled to qualified immunity because it was not clearly established in 2013 that a police officer could not use deadly force to prevent a fellow officer from being dragged by a vehicle fleeing from the scene of a crime. Indeed, the Eighth Circuit's opinion in *Molina-Gomes* suggests that such force is permissible. Plaintiff identifies no cases to the contrary but merely asserts that the Supreme Court's articulation of the qualified immunity standard is incorrect. (*See* Alternatively, Officer O'Connor is not Entitled to Qualified Immunity [89] at 1 ("Qualified immunity should not apply regardless of whether the government official's error is a mistake of law, a

mistake of fact, or a mistake, or a mistake based on mixed questions of law and fact.").) Accordingly, even if Defendant's use of force were not objectively reasonable, the doctrine of qualified immunity would warrant summary judgment in his favor.

## **CONCLUSION**

For the foregoing reasons, the court denies Plaintiff's motion for summary judgment [86] and grants Defendant's motion for summary judgment [73]. Final judgment shall enter in favor of Defendant, and the case is terminated.

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal in this court within thirty days from entry of judgment. F_{ED}. R. A_{PP}. P. 4(a)(1)(A). If he chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may accumulate a strike under 28 U.S.C. 1915(g).

ENTER:

*[signature]*

Date: February 15, 2018

_____
REBECCA R. PALLMEYER
United States District Judge